v. New York Firearms Association et al v. Chiumento et al. All right, Mr. Klein, you reserve two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor, and may it please the Court, my name is Stephen Klein on behalf of the New York State Firearms Association. George Borrello, David DiPietro, William Ortman, and Aaron Doerr. I begin with the opening of a historic Massachusetts loyalty oath available in the appendix at A130. We, the subscribers, do each of us severally for ourselves profess, testify, and declare before God and the world that we verily believe that the war, resistance, and opposition in which the United American colonies are now engaged against the fleets and armies of Great Britain is on the part of the said colonies just and necessary, unquote. It goes on a lot longer than that. The superintendent claims that it's analogous to taking that oath every time every single New Yorker goes to take, to purchase a box of ammunition, to undergo a background check for doing the same every single time. Mr. Klein, I ask you to take a step back from the historical analysis because I want to get your views on what I think is a threshold question. Assuming ammunition is covered by the text of the Second Amendment because you can't fire a gun, obviously, without ammunition. Let's take that as a given. Before you have to do any textual, historical analysis of the tradition, don't you have to have a burden on the right itself? Isn't there a lot of case authority, including in Bruin itself, which says why and how the regulation burdens the right? So built into the Second Amendment is the word infringe, which requires a burden. Agree or disagree? I do agree, Your Honor, and I think it's been answered in Antioch. I think we've seen that before this court, those qualifications. In Gazola, they cite the case of Gazola. There was no discussion of it, but we analyzed a whole series of laws in New York and said we didn't do any historical analysis. We just said they don't violate the Second Amendment because we don't view these as burdening the purchase of firearms, right? Well, Your Honor, in Antioch, again, the idea of a background check is burdening. That's why portions of that have been struck out. If the person has to do nothing, maybe they don't understand what's happening here. Someone wants to purchase ammunition, they walk into the store, and they don't fill out a form. They have to just show their ID? Is that how it works here? Typically prior to this, yes. All right, so they show their ID, and let's assume for facial challenge purposes. I know you said there's not evidence in the record how long that takes. Let's assume it's essentially instantaneous, a minute, for them to run the name through a database to see if this person might be a felon. Because, as you know, it's a crime under federal law for a felon to possess ammunition, right? Yes, Your Honor. So how does that burden – the purchaser does nothing but stand there maybe for a minute. Let's assume it's a minute. How is that burdening their right to purchase ammunition or even for a firearm if they just have to stand there for a minute? It's an assumption of dangerous, Your Honor. And, again, first of all, I question all of this one minute and all these things. I think we've built a record already that this is problematic. Let's take a facial challenge first. On a facial challenge, there's no time frame built into this where they say, because we need to run the background, you have to wait X number of days or something like that. So for facial challenges – Correct, Your Honor. Facial is not based on – we have challenged the law basically on its non-functioning problems. We'll get to that in a minute. But I just want an idea of a facial challenge to this type of statute, which you also are making, right? Yes, correct, Your Honor. It's definitely a facial challenge. How is it – I go back to my question. How is it a burden, a meaningful burden on a person's ability to purchase either a firearm or ammunition if they have to stand there for one minute? Eliminating the presumption that this is a constitutional right that everybody has just by ignoring that and saying you're, in effect, a Catholic or a dissident Protestant or somebody. We're just going to assume you're dangerous and put you in this prophylaxis upon prophylaxis situation that has no, again – What are you talking about? You're talking about – this is being done for everybody and there's a lot of prohibited categories. I just gave you one. A felon can't have ammunition, right? Correct. So a municipality wants to check before they give that person something that they would instantly be a federal crime. They just want to check to see whether or not they're, in fact, a felon or not, right? It's checking – again, the idea of checking everyone, Your Honor, at the outset, taking this away and not doing – So you're saying they should only check the felons? No, Your Honor. Because that would be nonsensical, right? Nobody – To say I'm going to check only the felons to see if you're a felon. So let me just back up. Is it okay – you're saying it's not okay to check whether they're a felon before you sell – require them to check whether they're a felon before you sell them ammunition. That's your point. That is my point. So you're saying that it should be, under the Second Amendment, perfectly constitutional for firearm sellers to sell ammunition to felons. No, Your Honor, I'm not. That's, again, the post – you know, we have laws – So we should only go back and figure out later whether they happen to give it to a serial killer, for example, right? Not just a felon. Among other felons. No, I'm serious. I'm actually serious. I understand. That is actually your position. Yes, Your Honor. It's our position. It is, again, the burden here – How is that consistent with footnote 9 in Bruin? In Bruin, footnote 9, it suggested all the chalice-shoe licensing regimes, which could have much more to them than just standing there for a minute, are fine as long as there's not an abuse, which I said, a lengthy wait time or an exorbitant fee. How do you address that? Your Honor, footnote 9 falls comfortably into a long-standing tradition, which is recognized in Heller as well as McDonald, and, again, similar to background checks for firearm purchases that are probably not – that are, despite not falling into the necessarily historic basis, like the National Instant Criminal Background Check, it's not going to be found in the time of the ratification or the 14th Amendment. But, again, it suggests that that's rooted in some historical analysis. There was no historical analysis in connection with footnote 9. They just carved those out and put those aside and said, we're not talking about those. On that given day, Your Honor, again, we have nothing here other than post-Heller California law. This isn't longstanding. And, again, this is a reaction eight days after Bruin. So I do – and, again, going back – We have, like, at least four circuits that have said, whether you consider it part of step one or step two, that you have to conduct some type of analysis of whether or not there's a meaningful restraint, that the law that's being challenged imposes a meaningful restraint on the right. The Fourth Circuit said it in Marilyn Schell issue. There should be more. The Seventh Circuit – and I'll give you – this one is the best one, Scheidt, where you had to fill out a form, a form 4473. And Judge Scudder said the plain text of the Second Amendment doesn't cover this conduct, so we don't need to do a historical analysis because filling out a form is so insignificant in terms of a burden on the right. We don't even get to historical analysis. The Fifth Circuit said it in McCrory. So every circuit that has addressed this type of analysis has said before we get to a historical analysis, we have to decide whether or not this is a sufficient burden to even infringe the right. And I'm finding it hard to believe that, given all the other types of things that have to be done in connection with firearms, that this would constitute a burden. Your Honor, I do think the aggregate has started to add up in a prophylaxis upon prophylaxis problem. I do believe that this is a burden because if Antonia could challenge the social media provision, part of the background check, how can we not challenge the entire – doing the entire thing? That's completely different. To go into someone's social media and potentially deny them a gun based upon their social media, it's a discretionary decision that's much more intrusive than having someone say you have to wait here one minute so I can check to see if you're a felon or not. You're really equating a social media search with that? I am equating putting everybody – everybody through that who is – many of whom who have already – who are law-abiding citizens just bringing this presumption in, whether they own a gun or not. And if they do, they've already registered it. They've already gone through a background check to buy it. Let's put aside what the reason is for the wait. A one-minute – the argument is that a one-minute wait burdens the second. For whatever reason, right? Yes, for every time a citizen is going to go buy ammunition for a firearm. Absolutely. If everyone was buying these by credit card – I'm sorry? If people were buying these things by credit card, right? I would imagine most people do. Maybe some people pay cash. And the systems were slower than they are today. Let's say instead of being able to tap your card, we're back several years ago where it takes a minute for the credit card to clear. Is that a burden on their right to buy ammunition? Well, the government – if the government were mandating the use of a credit card to buy ammunition, I might think that we're not – I'm not asking that. I'm asking whether the burden is equivalent. I understand that you can only fault under the Second Amendment a burden imposed by the government, but I'm asking whether the magnitude of the burden, in your view, is the same. Whether the delay in the credit card beeping through is an equivalent to the burden that they have to wait for the next check to come back. The magnitude of the burden, I'm asking, not who imposed it. I would say if a credit card system is messing up, it does impose a burden, yes. Can I – just following up on Judge Bianco's question. The licensing and registration regime for firearms is permissible, right? Yes, Your Honor. And that is for the reason that Judge Bianco was questioning you about, that the burden doesn't reach the level of infringement, right? I believe so, Your Honor. So then what's the difference? I guess that's the issue. It happens more often two to five times a year for the average ammunition purchaser. But if it's de minimis or instantaneous wait time that you're talking about, or 250 per transaction, how does that get you to something that's constitutional? Well, I do – for Bruin's situation, this idea that this burden is something – forgive me. Similar to the First Amendment analogous, which is still borrowed from in Heller and in Second Amendment. This idea, oh, you're just filling out a form before we're letting you exercise your right, is a burden. And I will stand on that one. This is a prophylaxis, unprophylaxis argument that because it's already regulated that adding another de minimis regulation on top of it is – Yes, and we think that does fit very well into the Bruin analysis as well. What about the fact that people might have illegally purchased the guns? A lot of people purchase guns illegally, right? Sure. Or they might have a ghost gun, right? Yeah. And the only way you're going to potentially, potentially, hopefully catch someone in that category who might be a felon would be to check at the time of the purchase if they purchase ammunition lawfully. That would be the only time you're going to see that person. You're not going to see them in a gun shop, right? Your Honor, I think, again, it's this idea that this – that's basically a drag net, right? And it's just like if we stopped everybody at a DUI checkpoint and set them up and just stopped everybody, right? That's – we might catch some drunk drivers that way. That doesn't mean the checkpoint is per se constitutional. Can I just ask you for a moment about the as-applied challenge? You did have one plaintiff who said he tried to purchase the ammunition and the system was down. I guess the question is, is that enough for purpose of an as-applied challenge, that on one occasion a plaintiff went to a store and the system was down? Like what case law do you have that that's enough for purposes of an as-applied challenge? We're at a preliminary injunction stage here where there's got to be a likelihood of success on the merits. Your Honor, I think for the PI stage for the as-applied, yes. And I would say with ten affidavits, it goes far – it's been far worse than that, right? And I do think the interesting point is that this court, I know, is not empowered to put New York on – make it enforce its own laws. But even the law itself is supposed to provide for the purchase of ammunition when the system is down. And those regulations, to my knowledge, have not even been proposed as of yet. You have ten affidavits where people went into the stores and the system was down? The system is down, but moreover the Kafkaesque Nightmare, I think it's the affidavit of Mr. Aralia, Your Honor, who was – It was one that went in. You're saying there's ten? No, I'm – yeah, there's ten affidavits. On the issue of whether or not there's an undue delay, you have one person – one? As a plaintiff, yes, Your Honor. The state says that you didn't raise an as-applied claim in the district court. Is that right? I think that's incorrect, Your Honor. I think it's very clear we're as-applied as to the registration as a seller of ammunition by Mr. DiPietro in order to sell Mr. Ortman a box of .22 ammunition. And also I do believe as-applied is our challenge to the functionality of this system, which is problematic. I know you're – I just have one quick follow-up question. Your claims as to the licensing registration background check and the fee and the delays, do those all rise and fall together or are they – No, Your Honor. No, I believe facially, again, it is unconstitutional under the Second Amendment to impose a system of background checks for every purchase of ammunition by every New Yorker every time they go into a gun shop. Can I just ask one more question on the as-applied? I thought some of your as-applied challenges were really coming through your associational standing allegations. Is that right? I think that's fair, Your Honor, for the failure of the background check system. Okay. But I understood the – and I'm going to forget which of the plaintiff was trying to do with the $8 sale of ammunition one to the other. I understand that would be an as-applied challenge as to them as to that transaction and what flows from it. But the other stuff, I don't think you had anything as-applied as the individual plaintiffs, individually named plaintiffs, right? I think Mr. Doar, again, can raise the as-applied owing to the failure of the system on the two days. Okay. How do the people – the other plaintiffs, how do they have standing, the ones who just never even tried, the individual plaintiffs, how do they have standing? And Taniuk is clear about the similar to First Amendment chill that, look, this is going to violate my rights, so I'm foregoing it. That was when they had to do additional things. They had to – social media would be checked, whereas here they just have to stand there, right? So where's the chill? I'm chilled because I'm going to have to stand there? I'm chilled because, again, to compare it to a loyalty oath, Your Honor, this is – it's interesting that what I read here in the intro, this idea that your law-abiding nature is being questioned. It's a humiliation, Your Honor. It's, again, this idea that this law is really enacted to – as a sort of a retaliation against Bruin, and I do think my clients do believe that. They can certainly check after the person left, right? Oh, and the police could too, right? No, let's say that the person didn't have to stand there, but as soon as the person is walking out, they're running the same check, right? Is that a humiliation too or no? I think so, Your Honor, yes. So they can't run the check even if the person leaves? That violates the Second Amendment, right, to – because you have the person's name? I don't think it violates the Second Amendment, right? I think it would violate some other laws, Your Honor. How is it a humiliation? I'm sorry, I'm not following. To find out if they're a felon, then they'd say, oh, you're not a felon. That's humiliating, to be told you're not a felon? I'm really not following the humiliation angle. The angle – again, Your Honor, that these are law-abiding citizens being questioned for – So what's the humiliation? For a simple – and we take – you know, we talk a lot about tradition, Your Honor, in Second Amendment context, and the tradition is that time immemorial, whether it was musket balls or cartridges more recently, you could simply, as a law-abiding citizen, go buy. Just answer my question. What's the humiliation part? Again, that now that's being subjected to this regime as well. What is what? Again, something that could be done.  The purchase of ammunition. Okay, I want to buy liquor. They have to check my ID to see how old I am. Am I being humiliated because I'm being told that, well, maybe you're under 21? No, but again, liquor's not a constitutional right. So I guess I'm not sure how it's humiliating to say to you, sir, I just want to make sure you're not a felon. Oh, great, you're not. That's sort of a compliment, isn't it? I'm serious. I don't see the humiliation angle. I'm not really seeing where you're coming with that. Again, I think the checking of a law-abiding citizen for doing something – it seems to me the only people who are going to be humiliated are the felons. It turns out you're a felon that was in there trying to get an ammunition, and then that's somehow disclosed to the people who were there in the store. I don't know that that's a constitutionally protected interest to be outed as a felon who was trying to break the law. I respectfully disagree, Your Honor. Thank you. Thank you, Your Honor. We have from the State, Mr. Kiernan. May it please the Court, Beasley Kiernan for the Superintendent. The District Court correctly denied plaintiff's motion for a preliminary injunction, and I'd like to start, if I may, with the merits, specifically why the challenge laws do not implicate the plain text of the Second Amendment. Of course, the Second Amendment protects the keeping and carrying of arms. Background check laws, like New York's, are conditions and qualifications on the commercial sale of ammunition. As this Court explained in Gazzola, conditions and qualifications on the commercial sale of arms are presumptively lawful regulatory measures. Bruin itself approved of background checks, noting that they are designed to ensure only that those keeping and bearing arms are, in fact, law-abiding responsible citizens. I think the Fifth Circuit's decision in McRory v. Garland is particularly instructive. The Court there upheld one of the federal laws requiring a background check for the purchase of firearms, and the Court explained that on its face, this phrase, keep and bear, in the Second Amendment, it does not include purchasing. It certainly doesn't include purchasing without a background check. Your position is that the purchase of ammunition is not within the text of the Second Amendment? Is that the position? Our position is that it's not within the text of the Second Amendment. Hold on. Before you get to the but, in Gazzola, which you're relying on, it didn't reach the issue of the ammunition because it was an issue of standing, but we cited the Tennessee Supreme Court in that case for the broad proposition with regard to the right to keep arms necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms. And there's a whole series of cases, including in the Ninth Circuit, that say ammunition has to be included within the Second Amendment because you can't bear arms and defend yourself if you don't have ammunition. Right. And it's certainly true that if a state prohibited the purchase or sale of ammunition, that would certainly be subject to Bruin's history and traditions test. Or even just not prohibit, just burdened it to an extent that it made it very difficult for people to get. Exactly. A significant constraint. And in our view, that means that the laws effectively eliminate or significantly impair the ability of law-abiding citizens to purchase ammunition. That's the language this court used in Gazzola. And you could bring a claim that background check laws do create really lengthy wait times. But the evidence of lengthy wait times, for example, is just lacking in this record. And the district court found that plaintiffs failed to meet. So there's really no evidence. We're assuming that it's instantaneous. But there really is no evidence in the record that it's instantaneous. See, that's a minute, right? There's nothing in the record about the length of time it would take to run this check on a computer system. Superintendent Cumento's declaration, this is at page 50 of the appendix, does say that the background check system immediately sends a proceed response if there's no match between the identity of the purchaser and a potentially disqualifying record. But Your Honor is right that there's no evidence about the average amount of time it takes to act on that. There's a lot about percentage of people approved, which is very high, but not about the average time or whatever, right? There's no evidence on that. But it was plaintiff's burden to show that these laws actually have the effect of preventing people from exercising their rights, such as by inducing evidence that the average wait time is extraordinarily lengthy. Or that the system goes down frequently. Right, right. And Superintendent Cumento explained again in the declaration, page 52 of the appendix, there were no significant downtimes in the system. Occasionally there might be a downtime, as with every electronic mechanism. But that's certainly not enough to enjoin the law on its face. At most it could be the ground for an as-applied challenge. It's certainly not enough for a preliminary injunctive relief. The case in the... Go ahead. I'm going to change the subject. What's that? I'm going to change the subject. I just wanted to ask about the Southern District of California case. Rhodey Road. It's not distinguishable. California has the same law. You just think that case is wrong, the district court, right? The laws are a bit distinguishable. The California law, it's much more complicated. I think the records show that there was actually a 10% rejection rate in 10% of the cases. The state of California actually couldn't even conduct the background check. Here the record shows that 98.6% of all background checks are approved, and the remainder are either delayed or denied. The systems are different in that respect. Under New York's system, someone who walks into an ammunition store is presumptively able to purchase ammunition, unless the background check shows some potentially disqualifying record. California's, I think, looks a little bit deeper at whether there's a matching record in the state's firearm license system. There were violations. There were mismatches. I think it was organized fees. I don't know what the fees are in California. Are the fees different? The fees range, I think, from $1 to $37. It's a more complicated scheme for sure. Here it's $2.50, right? Here it's $2.50, yes. You couldn't charge $2.50 to vote, right? That's right. What's the difference? Why is charging anything not an infringement of a right if it's a constitutional right? The difference is, as this court held in Quang V. Bloomberg, a fee to defray the cost of a background check is permissible, so long as it's tied to the service that the state is providing. So what if voting costs $2.50 to maintain the database and to do administration? Your Honor, that may be permissible. We have cases saying polling taxes are illegal, and I think in those cases the poll taxes were clearly designed to disenfranchise groups of people. But I don't think it would be impermissible if you want to vote by mail. A municipality could say, well, you have to use your own stamp, and that's a minimal burden. And here, too, plaintiffs agree that the $2.50 fee is minimal. We're not saying that a $1,000 fee is constitutional, but the $2.50 fee is minimal, and it's tied to the cost of the state to run the background check itself. If we had to reach the historical analysis, why isn't the use of some laws that target whether it be people who are Catholics or other groups as disloyal, why would that be a basis for upholding a law that requires everybody, all people, to undergo the same procedures? When clearly, shamefully, at that period of time, those people were considered disloyal for some reason. How could that possibly work? I think the most analogous laws are the founding-era loyalty laws, which did broadly require citizens to take an oath of loyalty. And in several states, if citizens declined to take that oath, they were disarmed. That's a prophylactic measure. It broadly applies to the people generally. But it does not broadly restrict the use of arms by the public. That's a one-time thing, right? So you take care of both, and then... Did everyone take the oaths? Was everyone required to? I'm not sure how often the oaths were required to be taken, but that's correct. But were they general for the population? I don't know how these work. The way the laws read in Massachusetts, Pennsylvania, New Jersey, they do seem to apply to males or white males above the ages of 16 or 17, 18. So this here, then, would be more akin to taking a loyalty oath maybe every time you buy, five times a year, however many times you buy ammunition? It could be, Your Honor. But the burden of each individual background check is so minimal here. It's not even requiring that a purchaser make an oath or make any sort of declaration. It really happens on the back end. It's a background check requirement imposed on the seller, who just confirms that the person... So we're back at the burden, I guess. But if you are in the historical comparison, then it seems the difference is primarily in the frequency. The frequency is different, but the burdens are comparable. Rouenat tells us to look at how and why the burdens are comparable. And the burden here, if anything, it's lesser than the founding era loyalty laws. Granted, the frequency is greater, but each individual background check imposes a very minor burden on the purchaser, who, again, doesn't have to make an oath. We also point to colonial era bans on ammunition sales to Native Americans or French without a license by the governor. This, again, is a kind of prophylactic measure designed to prevent sales to people perceived as dangerous at that time, a prophylactic measure designed to keep arms and ammunition out of the hands of dangerous people. We also point to historical analogs for the fee requirement. There's a long tradition of imposing fees on ammunition sales. The registration requirement also has historical analogs dating from the early 1800s. So for all these reasons, the laws are relevantly similar to analogous historical laws in terms of how and why they... The district court in California said these repugnant historical examples of prejudice and bigotry will not be used to justify the state's current infringement on the constitutional rights of citizens generally. And the state of New York disagrees with that? Those laws certainly would have violated the Equal Protection Clause if the clause existed at that time. But evidently, it did not violate what people perceived to be a right to keep and carry arms because then as now, it's accepted, it's common sense that states can keep arms and ammunition out of the hands of dangerous people. All right. Thank you. Thank you. I know I didn't address standing, but unless your honors have any questions on that point. Well, I mean, I don't want to go plaintiff, but certainly the plaintiff who went to try to purchase ammunition in the system is down, certainly that plaintiff at a minimum has standing, right? Mr. Doar did suffer an injury at that point. To assert a claim for injunctive relief, he has to say that in the future, I will face a similar problem and he merely speculates that the system will similarly be down and that's why he won't purchase ammunition in the future. That's rebutted again by record evidence that New York State processed over 29,000 background checks just in a three-week period in September and October 2023, approved 98.6% of those background check requests within that period. So Mr. Doar does not have standing based on his speculation that there will be future technical defects. And the other plaintiffs simply failed to explain why they don't want to submit to a background check or the associated fee. That's what distinguishes this case from Antoniuk where the plaintiff there, Mr. Sloan, explained that he didn't want to disclose information about his family, his social media, to the government. The disclosure requirements themselves injured him. That's what gave him standing to challenge the licensing regime itself. And that kind of detail is lacking here. Thank you. Thank you very much. Mr. Klein, you have two minutes in rebuttal. Thank you, Your Honor. I think it's loyalty oaths are distinct in so many ways, as was pointed out, this length of time, this, you know, swearing before God and then, well, do it again tomorrow if you happen to come purchase a box of ammunition. Again, that's where I think the analogy breaks down. Moreover, this assumption, as we discussed just now about, you know, Catholics, dangerous people, I do agree with the lower court in Rody that it's about as worthwhile as citing Korematsu for anything, any purpose. The record below, it is very concerning what's left after facial is very concerning because we have provided this. And I do wonder if the lower court's record of days and days of attested people showing that, to say the least, Mr. Cemento's, Superintendent Cemento's affidavit is shockingly inaccurate at points. I do wonder if that should give pause as to serious problems that are ongoing and probably still are ongoing. And the difference between instant, you know, proceed versus delayed. It seems like there's obviously some kind of gap between those two things. You're going to get discovery on all that, right? This is just a preliminary injunction. You're going to be able to find that out pretty quickly. If we have to, Your Honor, yes, but I prefer. I do believe this should be facially enjoined and that there should be this prophylaxis upon prophylaxis should be stricken as facially unconstitutional. All right. Thank you. Thank you for reserve decision. Have a good day.